# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGA & MEDLIN INSURANCE AGENCY, | 1:12cv0773 AWI DLB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO STAY LITIGATION AND TO COMPEL ARBITRATION |
| v. | |
| QBE INSURANCE CORPORATION, and DOES 1 to 100, inclusive, | (Document 7) |
| Defendants. | |

Defendant QBE Insurance Corporation ("QBE") filed the instant motion to stay litigation and to compel arbitration on May 17, 2012. The motion was heard on June 22, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge. Kendall Harrison and Dustin Brown appeared telephonically on behalf of QBE. Richard Crossman appeared on behalf of Plaintiff Morga & Medlin Insurance Agency ("Morga & Medlin").

**PROCEDURAL BACKGROUND**

Morga & Medlin filed a breach of contract action against QBE and Does 1 to 100 on March 22, 2012, in Fresno County Superior Court. QBE removed the action to this Court on May 10, 2012, based on diversity jurisdiction.

1

On May 17, 2012, QBE answered the complaint and filed the instant motion for stay and to compel arbitration.[1] On June 8, 2012, Morga & Medlin opposed the motion, and QBE replied on June 15, 2012.

The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for Findings and Recommendations to the District Court.

## FACTUAL BACKGROUND

On or about September 1, 2008, Morga & Medlin and QBE entered into a written "Agency Agreement." Complaint ¶ 7. Under the Agency Agreement, QBE granted Morga & Medlin authority to act as an agent for QBE to solicit, receive, accept, bind or endorse insurance coverage to the extent authorized by QBE's underwriting guidelines. Complaint ¶ 8. The Agency Agreement provided for Morga & Medlin to be compensated by commissions. Complaint ¶ 9.

The Agency Agreement contained an arbitration provision, which stated in relevant part:

> If any dispute or disagreement shall arise in connection with any interpretation of this Agreement, its performance or nonperformance, the parties shall make every effort to meet and settle their dispute in good faith informally. If the parties cannot agree on a written settlement to the dispute within thirty (30) days after it arises, or within a longer period agreed upon by the parties, then the matter in controversy shall be settled by binding arbitration, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction . . . .

Exhibit A to Complaint, Article VIII, p. 7. The Agency Agreement also provided that it would "be governed by and construed in accordance with the laws of the State of Wisconsin without giving effect to principle of conflicts of laws." Exhibit A to Complaint, Article XXII, p. 16.

On November 11, 2011, QBE gave Morga & Medlin written notice that the Agency Agreement would be terminated within 120 days, effective March 19, 2012. Complaint ¶¶ 13-14. On November 22, 2011, Morga & Medlin's counsel responded to the notice, arguing that the withdrawal of Morga & Medlin's agency authority during the 120-day notice period effectuated

---

[1] QBE also asserted mandatory arbitration as an affirmative defense.

an immediate termination in breach of the Agency Agreement and that Morga & Medlin was entitled to a $150,000 bonus.  Declaration of Susan Stephen ("Stephen Dec.") ¶ 3 and Exhibit A.  Morga & Medlin's counsel also stated that Morga & Medlin "could immediately file a lawsuit and seek substantial damages," but "hope[d] that the dispute [could] be resolved amicably within the next two weeks."  Exhibit A to Stephen Dec.

On December 1, 2011, Susan Stephen, QBE's branch manager for Fresno, replied to the arguments raised in the letter from Morga & Medlin's counsel.  Stephen Dec. ¶ 4 and Exhibit B.  After receiving this letter, Morga & Medlin's counsel, Michael Renberg, asked to speak with QBE's in-house counsel.  Declaration of Michael Renberg ("Renberg Dec.") ¶ 4.  QBE complied with the request by having its in-house counsel, Brendan Malley, contact Mr. Renberg.  Renberg Dec. ¶ 4.  The two men spoke on or about December 12, 2011.  Renberg Dec. ¶ 5.

The parties disagree about the substance of the conversation.  Mr. Renberg declares:

> On or about December 12, 2011, I had a brief telephone conversation with Mr. Malley.  I advised Mr. Malley that statements in the notice of termination were in breach of the contract and that my client was entitled to a bonus due in January because the effective date of the termination was not until March 2012.  [Mr.] Malley disagreed and simply asked that we send a courtesy copy of the demand for arbitration to his attention.  There was no settlement offer from QBE and I believe that QBE did not engage in a good faith attempt to informally resolve the matter.

Renberg Dec. ¶ 5.

In contrast, Mr. Malley declares:

> On or around December 12, 2011, I called and spoke with Mr. Renberg.  During our phone conversation, I tried to discuss the merits of the dispute with Mr. Renberg, but he did not appear interested in doing so.  Mr. Renberg had very little to say about the matter and did not make a settlement proposal.  Mr. Renberg threatened to file a lawsuit and I told him that the relevant contract had an arbitration clause.  I asked him to send me a courtesy copy of any arbitration demand he might make.

Declaration of Brendan J. Malley ("Malley Dec.") ¶¶ 3-6.

After the telephone conversation, Mr. Malley sent Mr. Renberg an e-mail, providing his contact information should Mr. Renberg "wish to further discuss and/or provide a courtesy copy of any arbitration demand."  Exhibit A to Malley Dec.  Mr. Malley did not receive any further

3

phone calls or correspondence from Mr. Renberg before the lawsuit was filed on March 22, 2012. Malley Dec. ¶ 8. Mr. Renberg reportedly filed the lawsuit in state court because he did not believe the arbitration provision was enforceable. Renberg Dec. ¶ 6.

## DISCUSSION

A.  Rules for Arbitration

QBE moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. and the Wisconsin Arbitration Act, Wis. Stat. §§ 788.01-788.18. QBE provides no basis to apply the Wisconsin Arbitration Act rules for arbitration, and not the FAA, in this action. Presumably, QBE believes that state law supplies the rules for arbitration based on a general choice of law provision in the Agency Agreement. However, both parties agree that the Agency Agreement falls within the scope of the FAA.

"When an agreement falls within the purview of the FAA, there is a strong default presumption . . . that the FAA, not state law, supplies the rules for arbitration." Johnson v. Gruma Corp., 614 F.3d 1062, 1066 (9th Cir. 2010); Fidelity Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004); Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1269 (9th Cir. 2002). "A general choice of law clause will not defeat the strong presumption in favor of the FAA's applicability." Kim-C1, LLC v. Valent Biosciences Corp., 756 F.Supp.2d 1258 (E.D. Cal. 2010) (choice of law clause interpreted as electing state substantive law and FAA procedural law); Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd., 109 F.Supp.2d 1236, 1252–54 (S.D. Cal. 2000) (general choice-of-law provision is insufficient to overcome the "overriding basis" the FAA creates for applying federal arbitrability law). Accordingly, the Court applies the FAA, not state law, rules for arbitration.

B.  FAA

In relevant part, the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

4

> controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.

The FAA creates "a body of federal substantive law of arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). Unless the agreement provides otherwise, all questions regarding interpretation of arbitration agreements are determined by federal standards. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006); Moses H. Cone Mem. Hosp., 460 U.S. at 22-24. Any question concerning arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 648 (1986) (citations omitted); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1139 (9th Cir. 1991). As with any contract, the parties' intentions control. Three Valleys Mun. Water Dist., 925 F.2d at 1139. However, the parties' intentions are generously construed as to issues of arbitrability. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). The court's role is limited to determining: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2001). If both questions are answered in the affirmative, then the FAA requires the court to enforce arbitration. Id.

5

QBE contends that the parties entered into an enforceable arbitration agreement. Arbitration agreements can be declared unenforceable only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact than an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1746 (2011) (citations omitted). Morga & Medlin argues that the arbitration agreement is unenforceable because (1) QBE did not make a good faith attempt to settle, which is a condition precedent to performance of the arbitration provision; (2) the arbitration agreement is unconscionable; and (3) the arbitration agreement is too vague to enforce.

*Condition Precedent*

Morga & Medlin contends that the arbitration agreement requires the parties to "make every effort to meet and settle their dispute in good faith informally" as a condition precedent to arbitration. Thus, Morga & Medlin argues that the Court should not enforce the arbitration agreement because QBE did not comply with this condition precedent to arbitration.

As discussed more fully below, the Court finds and recommends that this matter be referred to arbitration. Thus, the issue of whether the arbitration agreement contains a condition precedent and, if so, whether QBE complied with the condition precedent is a procedural defense that should be resolved by the arbitrator, not the Court. See, e.g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588 (2002) (noting that whether conditions precedent to an obligation to arbitrate have been met is question for the arbitrator to decide). The Court's role in this matter is limited to determining "(1) whether a valid agreement to arbitrate exists" and "whether the agreement encompasses the dispute at issue." Chiron Corp., 207 F.3d at 1130. Here, the parties do not dispute that the arbitration provision encompasses this breach of contract action  The only

6

disputed question is whether there is a valid agreement to arbitrate.

*Valid Agreement to Arbitrate*

Morga & Medlin first argues that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable.  The Ninth Circuit has stated that when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator.  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006).  When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under the FAA.  Id.  Here, Morga & Medlin does not challenge the validity of the Agency Agreement as a whole.  Accordingly, this court properly determines the issue of arbitrability.  See Cox v. Ocean View Hotel Corp., 533 F.3d 1114 (9th Cir. 2008); Roberts v. Synergistic Intern., LLC, 676 F.Supp.2d 934, 947 (E.D. Cal. 2009).

*Unconscionability*

As an initial matter, the Court must determine whether Wisconsin state law supplies the relevant standard for unconscionability.  A federal court sitting in diversity looks to the law of the forum state as to choice-of-law rules and for substantive law.  Openshaw v. FedEx Ground Package System, Inc., 731 F.Supp.2d 987, 992 n. 3 (S.D. Cal. 2010).  "Under California law, courts enforce choice-of-law provisions unless the chosen state does not have a substantial interest in the transaction or the application of the chosen state's law would be contrary to a fundamental policy of the state with a greater interest in the issue."  Id.  In this case, Morga & Medlin contends that California law should apply because there has been no showing that Wisconsin has a substantial interest in the transaction.  According to Morga & Medlin, the address for QBE listed in the Agency Agreement is Lenexa, Kansas, the notice of termination was sent from Fresno, California and QBE's corporate counsel is located in New York.  QBE responds that because the law of unconscionability in California and Wisconsin appears similar, the Court need not engage

1 in an exhaustive choice-of-law analysis.  QBE also indicates that Wisconsin is involved because
2 that is where QBE Regional Insurance, an affiliate of QBE Insurance, is located.
3    Based on the information submitted by the parties, the Court finds that the chosen state of
4 Wisconsin does not have a substantial interest in the transaction.  QBE is a Pennsylvania
5 corporation with its principal place of business in New York.  Doc. 2, p. 2.  Morga & Medlin is a
6 sole proprietorship with its principal place of business in Rocklin, California.  Complaint ¶ 2.
7 Although the notice of termination letter was purportedly sent from QBE Regional Insurance,
8 there is no indication that QBE Regional Insurance is involved in this matter, either as a defendant
9 or as a party to the Agency Agreement.  Exhibits A and B to Complaint.  Thus, there is no basis to
10 conclude that the state of Wisconsin has any interest in this transaction.
11    If an arbitration agreement is unconscionable, under California law courts may refuse to
12 enforce it.  Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).  To be
13 unenforceable, the arbitration provision must be both procedurally and substantively
14 unconscionable.  Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003).  Procedurally, Morga &
15 Medlin contends that the arbitration provision is unenforceable under California law because the
16 relevant AAA arbitration rules were not provided.  See, e.g., Trivedi v. Curexo Tech. Corp., 189
17 Cal.App.4th 387, 393 (2010) (arbitration agreement in employment contract found procedurally
18 unconscionable because it was drafted by employer, it was mandatory and employee did not
19 receive copy of AAA rules); Wisdom v. AccentCare, Inc., 202 Cal.App.4th 591, 136 Cal.Rptr.3d
20 188 (2012), *review granted and opinion superseded*, 139 Cal.Rptr.3d 315 (2012) (arbitration
21 agreement in employment contract found procedurally unconscionable because of unequal
22 bargaining power of the parties, lack of opportunity to negotiate the terms, AAA rules were not
23 attached, and no one called attention to the provision or explained it); Mayers v. Volt Mgmt.
24 Corp., 203 Cal.App.4th 1194 (2012), *review granted and opinion superseded* (Jun. 13, 2012)
25 (failure to provide applicable AAA rules added to the procedural unconscionability of
26 employment contract; arbitration provision was offered on a take-it-or-leave-it basis, was
27
28    8

mandatory, and employer did not provide a copy of the applicable AAA rules).

Procedural unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. Morris v. Redwood Empire Bancorp., 128 Cal.App.4th 1305, 1319, 27 Cal.Rptr. 797 (2005). This analysis includes consideration of the factors of surprise and oppression. Id. Morga & Medlin's only basis for alleging surprise and oppression is that the arbitration provision did not specify which AAA rules apply and QBE did not attach a copy of the applicable rules. This is not enough to establish procedural unconscionability. As QBE indicates, none of the decisions cited by Morga & Medlin hold that a failure to attach arbitration rules, by itself, renders an arbitration clause procedurally unconscionable. Moreover, the Wisdom and Mayers cases relied on by Morga & Medlin have been superseded because the California Supreme Court recently granted review in those cases.

Even if the Court were to conclude that the arbitration agreement was procedurally unconscionable, there is no basis to conclude that the arbitration agreement is substantively unconscionable. Substantively, Morga & Medlin contends that the contract is overly harsh or one-sided. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 114 (2000). Morgan & Medlin admits "there is minimal substantive unconscionability," but argues that "although it appears that there is mutuality of obligation to arbitrate based upon language in the provision it is applicable to 'any dispute', in practical terms, the provision is one sided because it is reasonable to anticipate [that] virtually all disputes would be claims by the Agency against the Insurance Company." Opposition, p. 9. This is pure speculation without any basis in fact. It is clear that the arbitration provision applies equally to both parties. Thus, the Court finds no substantive unconscionability.

Both procedural and substantive unconscionability must be present for a court to refuse to enforce an arbitration agreement under the doctrine of unconscionability. Armendariz, 24 Cal.4th at 114. As discussed, Morga & Medlin fails to establish either procedural or substantive unconscionability. Moreover, under the FAA, any doubts concerning the scope of arbitrable

9

issues should be resolved in favor of arbitration. Three Valleys Mun. Water Dist., 925 F.2d at 1139 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

Morga & Medlin next argues that the arbitration provision is vague because it fails to specify exactly which AAA rules apply. California law provides that "where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." Cal. Lettuce Growers v. Union Sugar Co., 45 Cal.2d 474, 481 (1955). Morga & Medlin speculates that because the arbitration agreement does not expressly identify the AAA's "Commercial Arbitration Rules and Mediation Procedures," then QBE might argue that the AAA's "Employment Arbitration Rules and Procedures" apply. Morga & Medlin provides no credible explanation for why QBE would attempt to apply the employment rules given Morga & Medlin's affirmation that it does not have an employee/employer relationship with QBE. Opposition, p. 10. The omission of specific reference to the commercial arbitration rules does not render the arbitration agreement vague. Furthermore, the "law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intention of the parties if that can be ascertained." Id.; see also, Pearson Dental Supplies, Inc. v. Superior Court, 48 Cal.4th 665, 682 (2010) ("When an arbitration provision is ambiguous, we will interpret that provision, if reasonable, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void.").

**RECOMMENDATION**

Based on the above, this Court HEREBY RECOMMENDS that QBE's motion to stay and to compel arbitration be GRANTED.

These findings and recommendations are submitted to the Honorable Anthony W. Ishii pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within **thirty (30) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **twenty-one (21) days** after service of the objections.  The District Judge will then review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 27, 2012**                    /s/ **Dennis L. Beck**
                                                               UNITED STATES MAGISTRATE JUDGE

11